## Williams's Estate.

*Partition—Practice, O. C.—Issue for jury trial—Verdict of jury not conclusive in Orphans' Court—Adverse possession—Curtesy.*

1. Where, on partition proceedings in the Orphans' Court, an issue has been certified to the Common Pleas for trial by jury, the verdict of the jury is not conclusive in the Orphans' Court, but advisory only.

2. If in such case the verdict is in favor of the plaintiff in the issue, who claims by adverse possession, and the Orphans' Court, acting as a chancellor, is satisfied with the propriety of the verdict, it may dismiss the proceedings in partition.

3. If it appears that the proceedings in partition were instituted by one claiming a curtesy in his wife's real estate, and there is a doubt whether his rights could be established by partition, the court will dismiss the proceedings, without prejudice to the petitioner's establishing his claim in another and proper forum.

4. To entitle a husband to curtesy, immediate possession of the estate during coverture must have existed, and the husband cannot be tenant by curtesy of his wife's estate in reversion or remainder expectant on an estate of freehold unless the estate is ended during coverture.

5. *Semble.* There is a distinction in the force and effect in the Orphans' Court between a verdict on an issue *d. v. n.* and on a feigned issue, in that the verdict in the former is of binding effect and in the latter merely advisory.

Rule to set aside proceedings in partition. O. C. Schuylkill Co.

*R. P. Swank,* for Lincoln Millward.

*Joseph H. Garrahan,* for Gwennie Jenkins.

WILHELM, P. J., May 29, 1922.—A proceeding in partition was instituted in this court by Lincoln Millward, who claims an interest by curtesy in certain real estate composed of one lot, situate in the Borough of Mahanoy City, being lot No. 7 in Block No. 29. The action proceeded regularly until an inquest in partition was held, whereupon Gwennie Jenkins presented her petition to the court, in which she alleged that the entire title to the property was in her, and that Lincoln Millward, the petitioner for partition, had no title to or interest in the property; that she, Gwennie Jenkins, acquired title to the real estate by adverse possession against Lincoln Millward for a period of about twenty-five years, and the prayer of the petition asked for a dismissal of the partition proceeding.

It was established by the testimony and the petitions and answers that Thomas W. Williams died in the year 1889, leaving to survive him a daughter by a former marriage, Ann Williams, afterward married to Lincoln Millward, and his widow, Mary Ann Williams, and four children, to wit, Margaret Jane Jones, William Thomas Williams, Ruth Morgans and Gwennie Jenkins, who

is the petitioner to have the partition proceedings dismissed; that Thomas W. Williams died testate, leaving a last will and testament, in which he bequeathed to his wife, Mary Ann Williams, all his real estate, which consisted of the property now in dispute, for and during the term of her natural life, with the provision that if she remarried, his widow should only have a child's share or one-sixth. Mary Ann Williams did marry Harry Lewis in the year 1894, and in the same year Ann Williams, the eldest child of Thomas W. Williams, who had married Lincoln Millward, died. Whether Ann Millward died before the marriage of Mary Ann Williams, or after, has not been established, either in this court or at the trial of the feigned issue in the Court of Common Pleas.

By the testimony presented, Gwennie Jenkins undertook to establish open, notorious, exclusive and continuous possession of the real estate by herself and those under whom she claims, thereby acquiring title thereto by ouster and adverse possession against Lincoln Millward and all other persons. It is unnecessary here to repeat the substance of the testimony submitted, because a difficult and disputable question of fact arose upon which a jury ought to pass. And an issue was framed and directed to the Court of Common Pleas that the following question of fact be submitted to a jury, to wit: "Whether or not Gwennie Jenkins has acquired the entire title and right of possession to lot No. 7 in Block No. 29 on the map or plan of Mahanoy City, Schuylkill County, Pennsylvania, and the premises thereon erected, being the houses numbered 724-726 East Centre Street, Mahanoy City, Schuylkill County, Pennsylvania, by reason of adverse possession of herself and those under whom she claims title?"

In the trial of that issue Gwennie Jenkins was the plaintiff and Lincoln Millward was the defendant, and the jury rendered a verdict in favor of the plaintiff, Gwennie Jenkins. A motion for judgment *non obstante veredicto* and for a new trial was made, and, after argument, both motions were overruled and the prothonotary was directed to enter judgment in favor of the plaintiff. And the Court of Common Pleas subsequently ordered and directed that the result of the trial of said issue, including all record papers, including a copy of the docket entries and the notes of testimony taken at the trial of said issue in the Court of Common Pleas, shall be certified by the prothonotary into the Orphans' Court of Schuylkill County in accordance with the mandate of said court awarding said issue," which duty the prothonotary performed as he was commanded, and said record is now lodged in the Orphans' Court.

The verdict of the jury and the judgment entered thereon, to the effect that the entire title to the property sought to be partitioned in this proceeding is in Gwennie Jenkins, having been entered in this court, we are now asked to make absolute the rule to show cause why the order of this court awarding an inquest in partition should not be vacated or set aside and the proceeding in partition dismissed, the petitioner for the rule to dismiss the proceeding in partition holding that this court is concluded by the verdict and judgment in the Court of Common Pleas. If this were an issue "*devisavit vel non*," it appears that the verdict and judgment in the Common Pleas would be conclusive and not advisory: Union Trust Co. *v.* People's Trust Co., 254 Pa. 385; Kellar *v.* Lawson, 261 Pa. 489.

In the case at bar we have a feigned issue to try a question of fact concerning the title to the real estate sought to be partitioned, and no case seems to hold that the verdict of a jury is binding upon this court in a feigned issue. It was said in Wible *v.* Wible, 1 Grant, 406: "We regard the ejectment found and tried under the order of the Orphans' Court as nothing more than a

2 D. & C.

feigned issue, designed to inform the conscience of that court on a matter of fact essential to their jurisdiction. The issue might have been in any other form, and imports no more in the form of ejectment than it would in *assumpsit* upon a wager. The verdict in such cases is merely advisory; no judgment is entered upon it, and no conclusive effect can be predicated of it. It is like a verdict sent by a chancellor to a court of law, which he may disregard if he is not satisfied with it."

It was said in Green v. Mills, 103 Pa. 22, which was a feigned issue directed by the Orphans' Court to the Court of Common Pleas to determine a question of fact arising in the course of distribution: "The verdict and judgment in the issue are not binding on the Orphans' Court." In Thompson's Appeal, 103 Pa. 603, Mr. Justice Gordon said: "There was in this case no application to the court below to direct an issue, and if there had been, the court might or might not have entertained it, as to it might seem proper and expedient. . . . Even should an issue be directed and a verdict had thereon, that verdict is no more binding on the court than is an auditor's report." In this case the decree confirming the report of an auditor was questioned.

In Hallowell's Appeal, 20 Pa. 215, an appeal from the decree of the Orphans' Court dismissing a citation which had issued to determine the validity of a promissory note, it was said: "An appeal from the final decree of the Orphans' Court brings the whole subject before us for review, and as the Orphans' Court had power to decide with or against the Common Pleas, so have we when the case comes into this court, if, in our opinion, justice requires us to do so." And again: "It is the duty of the Orphans' Court, when the result of the trial in the Common Pleas is sent to them to decide in accordance with the verdict, if they are so far satisfied of its truth and justice that the judges can conscientiously adopt the decision of the jury as their own. But if, on examining the evidence (which ought regularly to be certified to the Orphans' Court along with the verdict), they should be dissatisfied with the result, they may either order a new issue or decree according to their own convictions, without regarding the opinion of the jury."

In Fabel's Estate, 12 Dist. R. 329, it is said: "Issues requested in the Orphans' Court, other than those *devisavit vel non*, are discretionary and advisory only, like chancellor's issues. They are not awarded except when the court deems a verdict at law essential to settle a disputed matter in order to proceed properly to a decree, and even after such verdict it may be disregarded."

It appears there is a distinction in the force and effect in the Orphans' Court between a verdict on an issue *devisavit vel non* and a feigned issue, in that the verdict in the former case is of binding effect, and in a feigned issue merely advisory in the Orphans' Court. We have examined with care the record of the trial in the Court of Common Pleas, and the brief of counsel opposing the dismissal of the partition proceedings, and we are inclined to adopt the verdict of the jury, the case having been well tried and sufficient evidence having been presented to the jury to warrant their finding. It is unnecessary to further discuss the effect of the judgment entered in the Common Pleas, because the verdict of the jury meets with the approval of this court, and for the purpose of this case may be considered only advisory. It is possible that if this court regarded the verdict as not being sustainable by the evidence, the entry of the judgment in the Court of Common Pleas would be embarrassing.

In this case Gwennie Jenkins is and was in sole possession of the property to which she claims title by occupancy by herself and those under whom she

claims for a period of about twenty-five years. Lincoln Millward never was in possession of the property and has not shown that he had the right of possession. He claims the curtesy in an undivided portion of the property. In a suit in ejectment, the burden would be upon him to establish his title. An examination of the record shows that he could go no further than to prove potential curtesy. He did not prove that the marriage of Mary Ann Williams occurred before the death of Ann Millward, his wife, which was necessary in order to establish his curtesy. To entitle a husband to claim by curtesy, the right to recover immediate possession of the estate during coverture must exist, and the husband cannot be tenant by curtesy of his wife's estate in reversion or remainder, expectant on an estate of freehold, unless the estate is ended during coverture: Brandmeier v. Pond Creek Coal Co., 219 Pa. 19; Sanders's Estate, 41 Pa. Superior Ct. 77.

Counsel for Lincoln Millward seems to be under the impression that the curtesy of Lincoln Millward was admitted at the trial of the case in the Common Pleas. A review of the record fails to disclose any such admission. It is true that the notes of testimony contain an admission that "Lincoln Millward succeeded to whatever rights the said Ann Millward, his wife, had in the property." Of course, Ann Millward had no curtesy, and the admitted succession of Lincoln Millward to her right could not possibly be construed as an admission of his curtesy.

A grave doubt exists as to whether or not the title, or lack of title, of Lincoln Millward could be established and settled by this proceeding, or whether the possession and title of Gwennie Jenkins could be disturbed by it. Therefore, perhaps an excess of caution that no injustice be done prompts the conclusion that the rule to set aside the proceeding in partition ought to be made absolute without prejudice to Lincoln Millward, so that, if he can establish his title in a proper forum and in a proper proceeding, the judgment here will not prejudice his right to recover.

The order dated March 7, 1921, awarding inquest in partition, is vacated and set aside, and the proceeding in partition is dismissed, without prejudice.

From M. M. Burke, Shenandoah, Pa.